This case is United States v. A or Jho. Ms. Shapiro will tell you. It's Ong. Ong. Okay. So Ms. Shapiro, you have reserved two minutes for rebuttal on behalf of Mr. Ong. I'm going to keep practicing. Thank you. Good morning and may it please the court. My name is Alexandra Shapiro and I represent Roger Ong on this appeal. The key disputed issue at Mr. Ong's trial was whether a $35.1 million payment was an illegal kickback to him or a return on a prior investment by his wife, Huy Binh Liem. The trial's outcome essentially came down to a credibility contest between the government's cooperator, Tim Leisner, and Ms. Liem. And the jury clearly focused on that issue. The first thing they asked for during their deliberations was Ms. Liem's testimony. The video recording between Mr. Leisner and Ms. Liem could have provided critical corroboration of Ms. Liem's account. But the district court erroneously excluded the video based upon a misunderstanding of the rules of evidence. Can I ask a question about that? Because when I went back, I was sort of looking at the transcript and all this. When you talk about corroboration of her account, I didn't see a challenge, any sort of claim of recent fabrication or a claim that the phone call didn't occur, that she didn't ask for the records. What needs to be corroborated or needed to be corroborated by that video? Well, the video, just taking a step back, I think what the video shows is that she really believed that her testimony was true in the sense that what she described was that the payment was a return on this investment she had made with Leisner's wife in China. And during the call, she's asking him if he can help her get documents corroborating the existence of the transaction from his wife. And so it corroborated her entire account of what had transpired. Leisner doesn't say, what are you talking about? Why would there be documents? This was all a cover story, etc. So it impeaches him. It impeaches him and it also corroborates her account. And I would urge the court, as we did in our briefs, to actually watch the video as opposed to relying on the transcript because part of the corroboration just comes in her demeanor on the video and the way she's speaking and the way she's interacting with him, which you can see on the video that doesn't come through on the cold record. But the thing is, there's sort of two layers, right? There's the, did this call occur and did she make this request? It corroborates that, but that's not really a dispute. Right, that's not really the point. The point is that... And so what you really want to use it for is it, is the fact that she called him and asked for this reinforces that she believes documentation existed, which is an inference that also arises from her testimony on the stand. I called and asked him for that, but the sense is this is more, this isn't, this is, this is in real life. This isn't something somebody's saying on the stand. So it's got more... Yes, Your Honor. And I would point the court in that regard to this court's decision in the Dietrich case, which we cited, which in which there's something similar goes on there where the defendant testifies and they even let him testify about something he overhears law enforcement agents saying. The issue there was whether the person believed it was a drug case and there was a story about a marriage. And, but the, but the court didn't allow the defense to call the FBI agents to testify about a statement another person had made that corroborated this account. And this court, you know, basically pointed out that where this is the whole defense, the defendant has to be entitled to corroborate the account with independent evidence. And, you know, it isn't just the fact that, you know, they're allowed to give some testimony isn't enough. And that in that case it was another witness's testimony. But here we have physical evidence, a video that, that shows that, you know, that she was genuinely trying to find documents because, because this investment had occurred and she was trying to prove it. And, and just with regard to the recent fabrication that Your Honor asked about, I did want to make clear that there were numerous bases on which the video was admissible that were argued below. One was that many of the, the utterances, I'll call them, on the video were not statements, were not assertions within the meaning of the hearsay rule because they were questions. But we also argued, as, as counsel did below, that they were, would come in even to the extent there were assertions on the video under Rule 8033. With respect to, I think what Your Honor may have been referring to, Rule 801D1B, that actually does not require a charge of recent fabrication. The rule was amended in 2014, as was pointed out to the district court, both in briefs and in argument during the trial. And so there are, there were multiple reasons that, that would have justified admitting the video and the district court made legal errors in rejecting those bases. And this was really the heart of the defense. The heart of the defense was that this was an investment and it had been, it, it made in China and it was very difficult to get currency out of China. I'm still struggling with the corroboration notion. She says on the stand, I called him and asked for it. The video shows her asking for it. It doesn't, it doesn't corroborate the existence of a prior investment any more than her testimony. It's just another setting in which she's asking, indicating that she's looking for these things. We don't actually know if they exist based on her request. Well, Your Honor, I would disagree with that for the following reason. On the video, the video isn't just her talking. It's her having a conversation with Leisner. And in the course of that, he testified definitively that this was all a cover story. And so, you know, she's having this conversation with him. She's asking if Judy might have documents. He never suggests anywhere on this recording during this conversation that there, of course there aren't documents. There was no investment. But if that was their pre-agreed cover story, why would he? Well, there's no indication on the conversation that anyone was listening in. This is a private conversation they're having. Now, he knows that he's making it at the behest of the FBI, but she doesn't know that. And you would think that if he was trying to produce incriminating evidence, he would have said, given some sort of contest to the, the, the implications of her questions, and he would have said something in the conversation about that. By your logic, it would seem to me you also would be able to introduce out-of-court statements from other people who heard her say that, yeah, I'm looking for documents, right? No, no, Your Honor. What's the difference? Well, the difference here is that both of these people testified at trial. They're both subject to cross-examination. And the statements come in under these specific rules of evidence. And I would point out that... But, but I'm just trying to understand. You're saying that this corroborates her version of, of events. And it really goes to her state of mind, is I think what you're saying, even though she's not a defendant, right? She's not a defendant, but the government made clear from its opening and throughout the trial that she was accused of being a co-conspirator. So her state of mind was highly relevant to the outcome of the case. But, but so why wouldn't it be if she'd had this conversation, not on tape, but with a third, with her mother, that her mother then wouldn't be able to testify? Well, Your Honor, it really would depend on what, what, how the conversation occurred and whether the statements were assertions or not, as the case here. I mean, it really depends on the specific words. Well, but now you're going back to the fact that these aren't assertions, these are questions. But I thought you were, a minute ago, said it didn't really turn on these being questions. I did not say that, Your Honor. What I said, and to be very clear, we have multiple bases on which this is not hearsay or it's hearsay within an exception and is admissible. The point about corroboration really goes to, you know, did this matter? Was it harmless error? It doesn't have anything to do with whether it's admissible under the hearsay rules. So, so I can't really answer some hypothetical about a conversation she didn't have. What we're dealing with is a district court ruling. I'm just trying to test your logic, but I guess you, you don't want to be tested. Okay. No, Your Honor. I just, I'm, maybe I'm, obviously I'm not being very clear. All right. So if right after that call with Leissner, she then has a call with her mother saying, hey, where are those documents? Why under, under your theory, it seems to me that you get to call the mother to say, yeah, she was looking for documents. She asked questions about the documents. Well, if there was a reason to, that might be the case. I mean, I, I can't say for sure, but because that, you know, those aren't the facts, but, but it might be the case that that kind of a conversation could be admissible. It would depend on, you know, the nature of the conversation and, and whether, whether if she was asking her mother for documents, that might be relevant in the context of this case. But I don't think that her mother was directly involved in the investment. Are you drawing a distinction? And I think, tell me if this is right. We're sort of going back and forth between admissibility and whether it was harmless error to decline to admit. So your theory is, if it's a question, it's admissible. Whether or not the conversation to, refusing to admit the conversation with the mother that's hypothesized is admissible isn't the issue. It's whether it would be harmless error. And that, and, and, and your argument here, I guess, is it's not harmless error because it was important for us to see her saying these things, not on the stand in a, in a context where, so, but, but that's, that's where I'm still struggling a little bit. Why, if the value of this is corroboration of testimony she's already given, and you can cross-examine, you know, Leisner's there for cross-examination. She can talk fully about the conversation with Leisner. Why is it important that she also be able to present the same conversation? Assuming it's admissible, why is it probative and sufficiently probative that it's not harmless error to exclude? Right. Well, maybe I can answer it this way. In, in the government's summation and, and particularly in the, in the rebuttal, the government attacked her credibility fiercely and argued that she made up the whole story and argued where are the documents, kept talking about where are the documents. And if you, if the video had come in and the jury had been able to see that she had this conversation with Leisner and asked him, you know, about the documents, asked him about contacting Judy regarding the documents and he, the way he responded or really failed to respond in his silence in that regard. The jury at that point knows that he's a cooperator at that point, right? And so, so how, I'm just trying to think about how that, it would be one thing if, if the jury had reason to believe that this was sort of a organic conversation happening outside of the context of the investigation, but once they know he's cooperating, that the government is essentially listening to this conversation, how does his reaction or lack thereof tell us anything about the underlying truth? Well, I, I would say two things. One, I think that's an issue that goes to the weight of the evidence, not its admissibility. Right, but if we're talking about homelessness, that matters. Because, you know, the government could make arguments about that. The jury never got to consider it. I think what the defense would have argued was something similar to what I said earlier, which is, yeah, he's cooperating. She doesn't know that. She's still asking these questions, but not in a context of, you would think that if they were real conspirators and they had cooked up this cover story, she would say, be saying things like, do you think Judy could create some documents or, or something like that, as opposed to, can we ask Judy if she kept the documents? Right, but that's focusing on her, right? And so some, a lot of your argument before was focusing on how he responded and how you would think he would respond if the documents didn't really exist, which would make a lot of sense to me if we didn't know that he was a cooperator at the time and so that sort of infused whatever gloss we put on his response. Well, I understand that, Your Honor, but I guess I think it's both things, really. I mean, I don't mean to suggest it's not, and that's why, again, I urge the court to look at the video, because I think if you see her demeanor, you know, I think it's very probative of the fact that she was, that she was telling the truth. And I think the jury might hopefully would have seen that had they been allowed to view the video. And I think, in fact, if you think about it, the reason the government, you know, why did the government fight so hard to keep this out? I think it's because it was highly probative. And, you know, the harmless error analysis doesn't require us to prove, you know, that the verdict would have come out differently. We just have to prove that this would have been highly important. And this was the defense, the entire defense centered around Ms. Lim's testimony. Her testimony and Leisner's, you know, took up more than half of the time of the trial. And it was really, it was really critical to the outcome. I see my, I've gone over time. Well, you have two minutes for rebuttal, so we'll hear now from Ms. Smith. Thank you. Thank you. Good morning, and may it please the court. My name is Alexandra Smith, and I represent the United States, and I represented the United States before the district court. I think there are a couple of things I want to make sure to respond to first. It's very significant that, in fact, Ms. Lim understood and believed that Mr. Leisner was cooperating at the time of the call. And I just want to walk through the factual record on that, because it really changes the nature of the call and this argument that Leisner's reaction should have been, you know, where are the documents? What are you talking about? Or, you know, we need to stick to our cover story. Because both parties on the call understood that this was not a normal phone call. Starting in 2015, there were articles that came out about about, you know, improprieties and criminal conduct at 1MDB. That's at A836. And then by the time that Ms. Lim and Mr. Leisner speak on a second recorded call in June of 2018, which is about three or four months before the call in question, Lim testified at trial that she believed that Mr. Leisner was quote-unquote compromised at that time. So she believed that he was cooperating with the government. That's at A858. So in June of 2018, she believes he's cooperating. Over the summer, there are public reporting that he is cooperating or that he's suspected to be cooperating. And that's at same sort of area of the record at A858 to 859. And by the time they have the conversation in October of 2018, not only does she believe he's cooperating, but there's been public reporting. So that infects the entire conversation. Mr. Leisner is playing a role. He's being directed by the agents on how to have the conversation. And Ms. Lim knows that somebody is listening. So she's sticking with the cover story that they've come up with. She's certainly not going to reveal on a call where she thinks someone she's speaking to is working with law enforcement what is really going on. So, you know, I think this argument that, you know, that it was very important to understand Leisner's response is completely belied by the underlying context of what the call was. There were a couple of other points that I wanted to make sure to respond to. For that reason, it doesn't actually corroborate Ms. Lim's story. There's the sort of the two bases for the prior consistent statement for the declarant. One is about recent fabrication. And I think it's very clear that there was a motive at that point. There was a motive as early as 2015, but certainly by 2018 to lie. And so it would not have been a reliable statement as a prior consistent statement for that reason. It also wouldn't have been reliable under the second prong that Ms. Shapiro referenced, which is the credibility being attacked. There's no case law to suggest that simply because the government said that Ms. Lim was a co-conspirator that any statement that she might have made that would otherwise be hearsay could be brought in as a prior consistent statement before she testified. Now, the defense moved in limine to admit this recording and the judge denied it for a variety of reasons. That in limine motion was made before trial started. And then when Ms. Lim testified, during her direct testimony, there was a motion to again to revisit the issue and to once again to admit the call as a whole. There's a sidebar at A, I believe it's 849 to 852. And the upshot of the sidebar is the judge says she hasn't been cross-examined yet. Her credibility hasn't been attacked. You have to leave to re-raise this after she testifies, which the defense did not. So, you know, to the extent- I mean, the defense raised a couple different theories as to admissibility and as to the sort of disagreed rotating for a challenged credibility, that makes sense. I think the defense argued, continued to argue, pretty vociferously that this wasn't hearsay to begin with. This was a question. Yes, I agree. And our response on that was that we don't believe it was a question. We believe it was an embedded assertion of fact. That was the judge's original ruling on the motion in limine. I don't believe that was specifically re-raised in connection with Ms. Lim, but that would continue to be our position on the issue of the question. Can I shift to the venue issue for a second? Sure. So, there's three counts here, and two of them are conspiracy counts, and we've got a co-conspirator traveling through the Eastern District. So, I'm not focused on those, but we have a money laundering count. Yes. And there's a statute that tells us how to determine venue for money laundering, and I'm wondering if you could tell me what the basis for venue for money laundering is under that statute. So, the money laundering count was also a conspiracy. Oh, it was a conspiracy to launder. Yeah, a conspiracy to launder. All three of the counts were conspiracies. Yes. Thank you. Okay. On the venue point, I mean, I think our threshold is that this fails at the threshold because it's a pleading issue. The argument is not that the jury instructions were wrong, that there was insufficient evidence, or that there was a miscarriage of justice on venue, but simply that it wasn't pled properly. And I think particularly on the money laundering count, it's important to remember that under Rule 7, all that's required is to track the statute. There's no requirement of a speaking indictment, and a money laundering count doesn't actually require overt acts to be pled. And so, what the defense would have this court do is read into the law, which doesn't exist, a requirement that the government plead venue to a more specific degree than they are even required to plead the elements of the crime, which must be proved beyond a reasonable doubt, whereas venue only has to be proven by a preponderance. And go too deep on the elements of the crime. Is there a case where we specifically have said you don't have to plead the facts supporting venue, you can generically allege venue? I don't believe that there's a case on that. I have not found a case on that. But there's certainly nothing to suggest that pleading within the Eastern District and elsewhere isn't sufficient, at least for the motion to dismiss phase. There was only one case cited by the defense at which this court reversed based on a venue challenge that was brought at the motion to dismiss phase, and that's the Brennan case. But that case is very, very different in the sense that there was a legal defect that the venue that was pled, which was properly pled in terms of what sort of facial on its face, was this idea that venue could be found for mail fraud in a district where the mail went through the district instead of originating from or going to. And so it was a sort of a legal defect in the venue at the very beginning, which was preserved in the original motion to dismiss, but it had nothing to do with whether there was sufficient evidence or whether the pleadings were sufficient at the end of the day. So that's the only case where this is actually all the other cases that the defense relies on are focused on the sufficiency of evidence at trial and sort of what the venue evidence actually was. A lot of my colleagues' argument focuses on that, but that's not actually what a motion to dismiss looks at, which is why the district court's original decision was correct. The panel doesn't have any other questions. All right. Thank you very much, Ms. Smith. We'll hear Ms. Shapiro for two minutes every vote. Thank you, Your Honor. Just a couple of quick points. First of all, with regard to counsel's discussion of what she claims the factual record shows about Ms. Lim's knowledge of Mr. Leisner's cooperation, I would urge the court to actually look at the appendix sites she mentioned because they do not actually bear out that that was the evidence at trial. And indeed, just by way of example, at A836, what I assume she's referring to is simply a question from the court as to whether Ms. Lim has any personal knowledge of something in an article about 1MDB. So sure, there were articles about the case and the Malaysian authorities were looking into it, but that's about it. With regard to, you know, the question, the hearsay issues and the rules of evidence, I would just point out, particularly with regard to our point about the questions in the conversation, that the advisory committee notes, as we point out in our brief in footnote three, make clear that to the extent there's any ambiguity, the question is supposed to be resolved against the party objecting to the evidence and in favor of admissibility. And I think the case law, particularly the decision by then-Judge Barrett and the underlying case, as well as similar Second Circuit law, supports that position. Lastly, I just want to respond very briefly on venue. With respect to the money laundering count, and I think actually it's quite important, because the money laundering count made the sentence twice as long. The judge imposed a consecutive sentence for the money laundering count, and under the government's theory, no defendant could ever win a Rule 12 motion to dismiss an indictment for lack of venue, even though the rule specifically requires defendants to raise such defects prior to trial, because in every single indictment I've ever seen in over 30 years of practice, it'll say in whatever district and elsewhere, the only exception I personally have ever seen to that was in the context of a plea agreement in which a defendant was explicitly waiving venue. And under, so under that theory, you know, nothing could ever, no one could ever succeed in such a motion. And I do think also it's worth mentioning that this Court's decisions in Royer and Zvalov make clear that even in a conspiracy case, venue requires substantial contacts between the defendant and the district, and there were no such contacts here, or alleged in the indictment. Were those indictment, yeah that's what I was wondering, are those like sufficiency of the evidence cases? Well, I believe so, yes, Your Honor. I think this usually comes up in that context, but the the sufficiency of the evidence was incredibly thin here as well, and we would be arguing that it was deficient, but that wasn't preserved below. So yeah, that's what I was going to ask. It's odd to be reviewing the sufficiency of the allegations in the indictment when we've subsequently had a trial, but I take it that isn't independent, that doesn't merge in some way, that that remains. There's no case that I've seen that says that, you know, you undertake some sort of a harmless error inquiry, but even were that the case, you know, we think the proof at trial is deficient as well, but the allegations in the indictment are even more deficient. So your view is that the venue requirements laid out in the money laundering statute are no different if it's a conspiracy? In other words, you still have to, with respect to an individual defendant, you still have to satisfy the venue requirements, and you have to make the allegations at the indictment stage? Correct, Your Honor, and I just, if I may, just make one more point. No, that's fine, because I have a question after that. I apologize. I just, I do think the court should view this venue question in the larger context of the fact that this, almost all the conduct in this case, occurred extraterritoriality. This was a scheme, you know, cooked up in Malaysia, Singapore, the UAE, London, all the people who were bribed, the foreign officials were in those countries, not in the United Kingdom. No, I think we get that. I guess I'm still trying to just figure out what it is that you're asking us to say that is required in an indictment going forward. I mean, it seems to me the indictments generally don't have to say much of anything other than, you know, what the charge is, and roughly when it took place, and where it took place. But that usually is, you know, done in a sentence or two. So you're saying that there needs to be more detail in indictment concerning venue? There needs to be, there need to be facts pled that establish that there's venue in the district. And if that weren't the case, again, I don't think there would be any point to Rule 12's requirement. Then in every case, you know, if a defendant... But so, like, what do you have to say? You have to state an overt act? You have to state what conduct took place in? There has to be something. And also, in this context of this particular case, you know, we have a very, very long speaking indictment that alleges lots of facts about lots of places, and indeed has a couple of references to New York. But those are clearly references to Manhattan. Right, but would you say it's a different standard if it's a speaking indictment as opposed to just a bare-bones one-pager? The requirement is what needs to be alleged in the indictment with respect to venue? Yes, Your Honor. Oh, what's your best guess? There have to be... In other words, if it's a speaking indictment, well then, the burden of pleading goes up higher as to what you need to allege for venue. Well, I wouldn't put it that way, and I think that there are clearly cases not just involving venue, but the substance of an indictment where, notwithstanding the fact that there's some case law that says that in certain contexts, simply repeating the elements can be enough, indictments do need to have some specifics to put the defendant on notice, and venue is one of those. Well, but I mean, putting you on notice that it took place in the Eastern District of New York and elsewhere is not sufficient, you're saying? It's not sufficient in the context, particularly in the context of this case, which took place almost entirely overseas, except to the extent, you know, that Goldman Sachs was involved. Well, it is a conspiracy, I mean, but I guess I'm just trying to figure out, this is, I mean, you seem to be almost arguing a civil complaint standard of, you know, post-ict bollantwamly, that you need to plead certain facts that would withstand a plausibility assessment, and I just don't see that in the case law or the rule. Well, Your Honor, I would respectfully submit that under Your Honor's theory, there's absolutely zero point to Rule 12, if you don't require anything more than a bare-bones conclusory statement that, you know, and if anything, in a situation like that, and as complex a case as this is, if the court, if the government had simply, you know, not done a speaking indictment, I'm sure this would have been one of those rare cases where a bill of particulars might have even been ordered. So, and then the defendant could have moved to dismiss on that basis. But I recognize that this is a somewhat unusual issue because the context usually comes up to this court post-trial in a Rule 29 context, but that's not what we have here, and I think that it is important to consider the broader, the broader, the part of the reason I'm bringing up the broader context is because foreseeability is necessary, and it just wouldn't have been foreseeable to someone like Mr. Ong that, you know, he would be dragged into the Eastern District of New York because of some theory about underwater cables. Thank you. All right. Well, thank you both. We will reserve decision.